[Civ. No. 9993. First Appellate District, Division Two.—December 17, 1935.]

R. P. FREDERICK et al., Appellants, v. FANNY B. LOUIS et al., Respondents.

James E. Neville for Appellants.

John F. Poole for Respondents.

NOURSE, P. J.—Plaintiffs sued to quiet title to a designated lot of land, to enjoin the defendants from using a portion of the lot in the maintenance of a sewer line, for damages for injury to their property, and for general relief. The defendants had judgment and the plaintiffs appeal on a bill of exceptions.

Lot 120 of the Mansfield's Lincoln tract in the city of Los Angeles was owned by one Bales who, in December, 1924, conveyed to the defendants the north sixty-five feet of the lot, retaining the south eighty-five feet. In April, 1925, Bales gave the defendants a written permit "to dig through my lot on 5703 Lexington Ave. to lay the pipes for sewer connection or water or gas for buildings which is going to be erected on her lot bought from me North 65 feet Lot 120. . . . " Mrs. Louis accepted "the above right of way" and, about two years later, acknowledged her own signature and caused the paper to be recorded. The signature of the licensor was not acknowledged. In 1925 the defendants erected a large apartment house on the lot purchased by them and ran an iron pipe sewer across a portion of the south eighty-five feet, connecting it with a terra cotta sewer running from the Bales' home. In December, 1927, the plaintiffs purchased from Bales the south eighty-five feet after a search of title failed to disclose the adverse interest claimed by the defendants. In February, 1928, the plaintiffs moved into the premises and, in July of that year, the sewer was blocked, causing an overflow in plaintiffs' premises and consequent damage. Repairs were made

but, in May, 1933, another overflow occurred and plaintiffs then protested to defendants that their maintenance of the sewer was without legal right and this action was commenced.

A number of legal questions are raised and discussed by both parties which we will generally leave unanswered. ■ That the document of April, 1925, was not notice to plaintiffs must be conceded as it was not acknowledged by the licensor, or grantee, and contained no description of the premises sought to be charged. Thus, when plaintiffs purchased their lot, there was nothing of record which would give them any notice of defendant's claim against that lot.

Direct and positive evidence was given that the sewer pipe was underground and invisible from any portion of plaintiffs' premises. Some testimony was given, incredible though it may be, that some portion of the pipe was above ground or exposed to view at a point where the necessary fall of the pipe would have required it to be at least eighteen inches below the surface. But the witnesses giving this testimony were indefinite as to the times when they saw the pipe exposed and were unable to say that it was so exposed prior to the trouble arising in July, 1928. The trial court did not find on this issue but found that plaintiffs had notice from December 5, 1927, the date of their purchase, by reason of the unacknowledged permit.

■ The equities of the controversy are so patent that a reversal for a further trial of the issues should be avoided if possible. The defendants were given a permit or easement to lay sewer pipes across the portion of the lot later purchased by the plaintiffs. They did not at any time, by permit, grant or prescription, acquire the right to maintain a nuisance on plaintiffs' premises by connecting their sewer with that of the latter. No such right can be inferred from the paper of April, 1925. It is not controverted that plaintiffs did not learn of this connection until the overflow occurred in July, 1928; hence a prescriptive right to maintain the connection did not arise before the commencement of this action.

The trial court found that plaintiffs' predecessor had granted a perpetual easement to the defendants to maintain a sewer across this lot and that such sewer was necessary to properly use the apartment house on the rear of the lot. But there is no finding and no evidence that it was necessary to connect this sewer with the sewer of the plaintiffs. There is

some evidence that defendants' pipe could have been carried on to the main sewer at a cost of less than one hundred dollars. Since this is the extent of the right which defendants can claim, and since the propriety of a way of necessity for that purpose cannot be denied, the judgment should be modified to limit their interest accordingly. The findings of fact are sufficient to support such modified judgment and a retrial will not be necessary.

The judgment is reversed with directions to enter a modified judgment and conclusions of law in accord herewith, the parties to bear their own costs.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 16, 1936.